UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) ORDER RE:

VERIFIED PETITION TO RECOGNIZE, CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARDS (Dkt. 1)

RESPONDENT JERRY JAMGOTCHIAN'S PRELIMINARY RESPONSE, INITIAL OUTLINE OF AFFIRMATIVE DEFENSES AND REQUEST FOR LIMITED NECESSARY DISCOVERY (Dkt. 46) **JS-6**

## I.   INTRODUCTION

The matter presented is the Verified Petition to Recognize, Confirm and Enforce Foreign Arbitral Awards ("Verified Petition") brought by Petitioners Linley Investments, Orpendale, Lynch Bages Ltd., Wynatt, Chelston and Springcon ("Petitioners"). Following briefing by both parties, and hearings on June 20, 2011, Dkt. 40, and September 8, 2011, Dkt. 54, the Court took the matter under submission. On September 9, 2011, the Court determined that Respondent Jerry Jamgotchian ("Respondent") could pursue limited and focused discovery on the issue of the alleged financial relationship between Petitioners and the European Breeders' Fund ("EBF") or the arbitrator here, Samuel Sheppard ("Sheppard"). Dkt. 53. Petitioners were also permitted to pursue symmetrical discovery. *Id.* The parties submitted supplemental briefs regarding the evidence obtained from this additional discovery on October 17, 2011. Dkt. 58, 59.

The Court has considered the parties' supplemental briefs, and for the reasons set forth in this Order, the Court GRANTS Petitioners' Petition to Recognize, Confirm and Enforce Foreign Arbitral Awards.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | | Date | May 11, 2012 |
|---|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | | |

**II. BACKGROUND**

Between March 14, 2007 and April 29, 2008, Respondent entered into 14 distinct "Nomination Agreements," which are horse breeding contracts, with an Irish entity known as Coolmore Stud ("Coolmore").[1] *See* Verified Petition, Exh. 1, Dkt. 1. Coolmore is a breeding organization that sells breeding rights with its stallions. The Nomination Agreements provide that the purchase and sale of nomination is between the vendor and the purchaser. On each of the 14 agreements, Respondent is listed as the Purchaser, and the owners or ownership syndicates for each separate stallion are named as the Vendors, along with Coolmore. Coolmore executed each of the agreements in Ireland. In addition, the stallions that were the subject of the agreements were all located in Ireland, the mares were bred to those stallions in Ireland, and the interest rate to be charged on each contract was set at the rate charged by the Associated Banks in Ireland. *See* Opp. to Mot. Dismiss ¶ 4, Dkt. 24.

Petitioners' counsel engaged in ongoing conversations in 2009 with Respondent as to amounts due under the Nomination Agreements. *See* Mackesy Decl. ¶¶ 11-13, Exhs. 1-3, Dkt. 25. On December 22, 2009, Respondent refused through a written email message to pay the amounts claimed by Petitioners under the agreements. Meuser Decl., Exh. 2, Dkt. 28. This email was sent from "jammer999@aol.com." In it, Respondent directed Coolmore, and its counsel, to address all future written correspondence on these issues to Respondent's counsel, Ronald Caswell ("Caswell"). *Id.*

On February 18, 2010, Petitioners engaged an Irish law firm in connection with the dispute over the claimed payments. That counsel sent a separate demand letter regarding the payment due under each of the 14 agreements to: (i) Respondent's P.O. Box mailing address; (ii) Respondent's email address ("jammer999@aol.com"); and (iii) Respondent's counsel, Caswell, at both the email address provided by Respondent and the street addess for the firm, *i.e.*, Caswell & Associates, 1625 Warnall Ave., Suite 100, Los Angeles, California 90024. Breen Decl. ¶¶ 4-5, Exhs. B1-B14, Dkt. 29. On February 26, 2010, Petitioners sent an additional 14 demand letters to Respondent and his counsel at the same addresses. *Id.* at ¶ 7, Exhs. D1-D15. These letters included a discussion on the choice of an arbitrator and three potential choices for an arbitrator. *Id.* The letters also noted that, in the event no arbitrator was agreed upon by March 29, 2010, a request would be submitted to the Thoroughbred Breeders' Association of the United Kingdom ("TBA") to appoint an arbitrator. *Id.* On February 26, 2010,

---

[1] The Verified Petition, and attached documents, do not expressly link Linley Investments, or any other Petitioner, to Coolmore, although Petitioners are listed as claimants in the arbitration awards and as having a branch registered as Coolmore Stud. Sheppard Decl., Exhs. A-1, A-2, Dkt. 30. However, other documents show that Linley Investments does business as Coolmore. *See* Mackesy Decl., Dkt. 25; Meuser Decl., Dkt. 28. Linley Investments states that it trades as "Coolmore Stud" and acts as the authorized agent and manager of stallions for syndicates that own individual thoroughbred stallions. Opp. to Mot. Dismiss ¶ 3, Dkt. 24.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

Caswell sent an email to Richard Breen ("Breen")[2] advising that he was "no longer representing Mr. Jamgotchian" and requesting that e-mails not be sent to him in the future. *Id.*, Exh. F.[3]

On April 9, 2010, having no response from Respondent, Petitioners sent a request to the chief executive of the TBA that an Irish arbitrator be appointed in the matter. Thereafter, on May 18, 2010, Samuel Sheppard was so appointed. *Id.* at ¶ 12, Exhs. H1-H15, I. Throughout June and July 2010, Arbitrator Sheppard attempted to contact Respondent to invite him to participate in the arbitration.[4] Sheppard Decl. ¶¶ 9, 11, 13, Dkt. 30. There was no response from Respondent. On September 3, 2010, Arbitrator Sheppard sent, by mail and e-mail, the final Arbitration Awards to Respondent. *Id.* at ¶ 15, Exhs. 8-9.[5]

Petitioners then filed the instant Verified Petition seeking confirmation of the arbitration awards under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 1958, *reprinted at* 9 U.S.C. § 201 (the "Convention"). Respondent filed motions to dismiss on April 14, 2011, Dkt. 20, and on June 6, 2011, Dkt. 32. This Court previously determined at the June 20, 2011 hearing that a motion to dismiss is procedurally improper to address issues of Petitioners' standing to arbitrate the underlying nomination agreements, choice of law, and other disputes over the arbitration agreement; the proper time to address those issues is during the arbitration process. Dkt. 40. The Court noted, however, that one of the enumerated defenses to the recognition or enforcement of an arbitral award is that "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Convention, art. V(1)(b), 21 U.S.T. 2517. Thus, the Court denied the motion to dismiss without prejudice to the Respondent's ability to contest the enforceability and propriety of the arbitration awards by asserting that, because notice to Respondent had been inadequate, the awards could not be confirmed or enforced.

The Court deemed Petitioners' response as evidence in support of its contention that the Respondent had been provided with notice of the arbitration proceeding. *See* Opp. to Mot. Dismiss, Dkt. 24. Petitioners were ordered to submit any further responsive evidence, and to the extent that Respondent contended that some discovery would be necessary to provide a more complete response,

---

[2] Breen served as legal counsel for Petitioners in this action. *See* Breen Decl., Dkt. 29.
[3] Caswell sent another email on March 11, 2010, stating that any future correspondence regarding the dispute would be discarded. Breen Decl., Exh. G, Dkt. 29-1.
[4] Sheppard sent several letters by Royal Mail to Respondent's P.O. Box address, emails to Respondent's "jammer999@aol.com" address, and facsimile transmissions to Respondent's fax number 001 310 374 8840. Sheppard Decl. ¶¶ 9, 11, 13, Dkt. 30. None of these mailings was either returned to Sheppard or rejected electronically.
[5] The final, supplemented awards were returned and stamped "Returned to Sender" and "Refused." Sheppard Decl. ¶ 15, Exhs. 8-9, Dkt. 30-2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

counsel for Respondent was directed to identify the discovery it was seeking and the basis for such requests.[6]

### III.   ANALYSIS

####   A.   Background on the Convention

In 1970, Congress ratified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 1958, *reprinted at* 9 U.S.C. § 201. The Convention is a multilateral treaty providing for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Convention, art. I(1), 21 U.S.T. 2517.

Congress implemented the Convention by passing Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, which provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. The FAA further provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

Article IV of the Convention provides that, "[t]o obtain the recognition and enforcement … the party applying for recognition and enforcement shall, at the time of the application, supply: (*a*) The duly authenticated original award or a duly certified copy thereof; (*b*) The original agreement referred to in article II or a duly certified copy thereof." Convention, art. IV(1), 21 U.S.T. 2517. A court presented with a petition for recognition and enforcement must confirm an arbitration award made pursuant to the Convention unless it determines that "one of the grounds for refusal or deferral of recognition or enforcement of the award specified in … said Convention" is present. *Polimaster LTD v. RAE Sys., Inc.*,

---

[6] The Court notes that Respondent filed an additional Sur-Reply in support of his Preliminary Response, Initial Outline of Affirmative Defenses and Request for Limited Necessary Discovery on August 28, 2011 after Petitioners filed a Reply on August 16, 2011. *See* Reply in Support of Respondent's Preliminary Response Motion for Order for Discovery Needed, Dkt. 48. The Court strikes this filing as inappropriate and does not consider it or the exhibits attached to it. Respondent did not seek, and was not given, leave to file such a reply.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

623 F.3d 832 (9th Cir. 2010) (quoting 9 U.S.C. § 207). *See also China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004). The Convention enumerates seven grounds for refusal or deferral of recognition or enforcement of an arbitral award. Convention, art. V, 21 U.S.T. 2517.[7]

Respondent's burden to oppose confirmation of an award is substantial because "[t]he public policy in favor of international arbitration is strong." *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) (quoting *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir. 1975)). Furthermore, the district court's review of a foreign arbitration agreement is "quite circumscribed." *Id.* There is a general pro-enforcement bias under the Convention. *See id.*; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519-20 & n.15 (1974).

Here, there is no dispute that the Convention applies to the arbitration agreements and subsequent awards. The original agreements were between entities in Ireland and a citizen of the United States, and the arbitration awards were the result of arbitration proceedings conducted in the United Kingdom. As noted at the June 20, 2011 hearing, the only appropriate defenses to be raised by

---

[7] These enumerated defenses include:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention, art. V, 21 U.S.T. 2517.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

Respondent are those enumerated grounds for refusal or deferral of recognition or enforcement of an arbitral award. *See* Convention, art. V, 21 U.S.T. 2517. Here, that includes Respondent's contention that he "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." *Id.* at 1(b). Respondent also alleges for the first time in his Response that Article V(1)(d) (composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties) and Article V(2)(b) (the recognition or enforcement of the award would be contrary to the public policy of that country) apply.

### B.     Defenses to Confirmation

Respondent argues that the arbitration awards cannot be confirmed because: (i) Petitioners failed to provide notice to Respondent of either arbitration demand; (ii) Petitioners failed to provide notice to Respondent regarding selection of the arbitrator; (iii) Petitioners failed to provide notice of the date, time and location of any of the arbitration hearings; (iv) Petitioners disregarded the Nomination Agreements regarding selection of an arbitrator; and (v) the arbitrator was biased and had continuing financial relationships with Petitioners. Respondent also requested specific discovery, which is discussed below, to support his affirmative defenses.

1.     <u>Notice</u>

a)     Legal Standard

Respondent first asserts that he "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Convention, art. V(1)(b), 21 U.S.T. 2517. This notice provision has been interpreted by United States courts to mean that the arbitration must comply with U.S. standards of procedural due process. *See Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 975 (2d Cir. 1974) ("This provision essentially sanctions the application of the forum state's standards of due process."); *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129-30 (7th Cir. 1997) ("[A]n arbitral award should be denied or vacated if the party challenging the award proves that he was not given a meaningful opportunity to be heard as our due process jurisprudence defines it."); *see also Biotronik Mess-und Therapiegeraete GmbH & Co. v. Medford Med. Instr. Co.*, 415 F. Supp. 133, 140 (D.N.J. 1976) (holding due process was not violated when the U.S. party received notice but did not participate in the hearings); *Sesostris SAE v. Transportes Navales SA and M/V Unamuno*, 727 F. Supp. 737 (D. Mass. 1989) (refusing enforcement of an arbitral award since a third party had not received proper notice of the arbitration proceedings); *Ferrara SpA v. United Grain Growers Ltd.*, 441 F. Supp. 778 (S.D.N.Y. 1977) (denying that there had been no proper notice of the arbitration because the request for arbitration had been served to an address different from the one mentioned in the contract, but was still one that the parties used to communicate); *First State Ins. Co. v. Banco de Seguros del Estado*,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

254 F.3d 354 (1st Cir. 2001) (finding that notice of arbitration was properly transmitted to intermediary in accordance with the agreements between the parties).

A fundamentally fair hearing requires that a party to a foreign arbitration be able to present its case. *See Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298-99 (5th Cir. 2004). A fundamentally fair hearing is one that "meets 'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. Int'l Amateur Athletic Fed'n,* 244 F.3d 580, 592 (7th Cir. 2001) (quoting *Sunshine Mining Co. v. United Steelworkers*, 823 F.3d 1289, 1295 (9th Cir. 1987)). The parties must have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992). "The right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure." *Matter of Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 310 (S.D. Tex. 1997), *aff'd,* 161 F.3d 314 (5th Cir. 1998).

        b)        Whether Notice Was Proper Here

Petitioners have presented evidence that they provided Respondent with notice of their intent to arbitrate and of the arbitrator selection process. They further contend that the chosen Arbitrator provided notice to Respondent regarding the actual arbitration process. The evidence Petitioners have presented of their communication with Petitioners includes the following correspondence:

- Feb. 18, 2010: 14 demand letters were sent to (i) Respondent at his P.O. Box mailing address, (ii) Respondent at his "jammer999@aol.com" email address, (iii) Ronald Caswell, Respondent's alleged attorney, at the email address provided by the Respondent, and (iv) Caswell at Caswell & Associates, 1625 Warnall Ave., Suite 100, Los Angeles, California 90024. Breen Decl. ¶¶ 4, 5, Exhs. B1-B14, Dkt. 29.
- Feb. 26, 2010: Another 14 demand letters were sent to Respondent and his counsel, Caswell. These letters included a discussion on the choice of an arbitrator, and three potential choices for an arbitrator. *Id.* at ¶ 8, Exhs. D1-D15.

Respondent contends that this evidence does not prove that he was provided any notice or opportunity to participate in the arbitrator selection or arbitration process here.[8] Specifically,

---

[8] Respondent also argues that, because a hearing was not held, he has been denied due process and that, for this independent reason, the award cannot be confirmed or enforced. Response, p. 10, Dkt. 46. However, this argument does not address a claimed lack of notice, but rather the manner in which the proceedings were conducted. For this reason, the Court focuses on Respondent's arguments about notice of the arbitrator selection and the arbitration itself. *See Overseas Cosmos, Inc. v. NR Vessel Corp.*, No. 97 Civ. 5898, 1997 U.S. Dist.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

Respondent contends that he never received the mail, email or facsimile notices that Petitioners allegedly sent to him. First, Respondent contends that his fax machine "was not attached to a dedicated line and had to be manually engaged because this line also serves as his home telephone and computer access line." Response, p. 6, Dkt. 46. Second, Respondent contends that he uses multiple email accounts and that his email has an aggressive spam filter that automatically blocks unknown and foreign addresses. Third, Respondent contends that he is often traveling for extended periods of time and accepts his mail at his home office address as opposed to his P.O. Box address. Moreover, Respondent argues that, even if these alleged notices were provided, none complies with the Federal Rules of Civil Procedure or the principles of due process. Finally, Respondent contends that Caswell was never his attorney for this dispute such that any attempts to notify Respondent through Caswell would not be sufficient to put him on notice.

Notwithstanding Respondent's Declaration, Petitioners argue that the email and P.O. Box they used to contact Respondent were the normal methods of communication between the parties. In fact, it is undisputed that Respondent used "jammer999@aol.com" to communicate with Petitioners. *See* Mackesy Decl. ¶ 8, Dkt. 25; Grogan Decl. ¶¶ 5-7, Dkt. 46-4 (includes emails sent from Respondent to Christy Grassick, Billy Mackesy, Wendy Normile, A. Cross, F. Phelan and others employed by Petitioners); Grassick Decl. ¶¶ 4-5, Dkt. 46-3. Furthermore, the nomination agreements list his P.O. Box as the "address" for the Purchaser. *See* Verified Petition, Exhs. A-N, Dkt. 1.

Similarly, Respondent's Declaration conflicts with prior communications between the parties. Respondent asserts that his former attorney, Caswell, "never represented [him] in this dispute." Jamgotchian Decl. ¶ 9, Dkt. 46-1. However, this statement is unpersuasive in light of the compelling evidence to the contrary:

- Dec. 22, 2009: Email from Respondent ("jammer999@aol.com") to Mike Meuser, Christy Grassick, Billy Mackesy, A. Cross, F. Phelan and Ronald Caswell in which Respondent advised Petitioners' agents that "IF COOLMORE WANTS TO COMMUNICATE WITH ME IN THE FUTURE, PLEASE ADDRESS ALL WRITTEN CORRESPONDENCE TO MY ATTORNEY, RON CASWELL @ 310-282-8150 (RCASWELL@SBCGLOBAL.NET) AS I WILL NO LONGER TAKE THEIR CALLS." Mackesy Decl., Exh. 3, Dkt. 25.
- Dec. 22, 2009: Email from Respondent ("jammer999@aol.com") to Mike Meuser, Christy Grassick, Billy Mackesy, F. Phelan and Ronald Caswell stating that "ONCE AGAIN, PLEASE DIRECT ALL FUTURE CORRESPONDENCE TO MY ATTORNEY, RON CASWELL." Meuser Decl., Exh. 2, Dkt. 28.

---

LEXIS 19390 (S.D.N.Y. Dec. 8, 1997) (allowing arbitration on written presentations in the absence of an objection from the parties).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

- Dec. 31, 2009: Email from Respondent ("jammer999@aol.com") to David Grogan, A. Cross, Christy Grassick, Billy Mackesy and F. Phelan containing a copy of a letter from Caswell addressing the stud fees owed to the Petitioners by the Respondent. This letter also provided that Caswell's office represents the Respondent in the dispute with the Petitioners and, therefore, stated that "no one from your office or from Coolmore … is to directly contact Mr. Jamgotchian." Meuser Decl., Exh. 3, Dkt. 28.
- Feb. 26, 2010: Email from Caswell to Breen advising, for the first time, that he is "no longer representing Mr. Jamgotchian" and requesting that e-mails not be sent to him in the future. Breen Decl., Exh. F, Dkt. 29-1.
- Mar. 11, 2010: Email from Caswell to Breen stating that any future correspondence regarding this dispute will be discarded. Breen Decl., Exh. G, Dkt. 29-1.

The Court finds that these communications from Petitioners to Respondent, and the communications cited below from Sheppard to Respondent, served as sufficient notice of both the selection of the arbitrator and the arbitration process. Petitioners used Respondent's email address that was the typical method of communication between the parties. They also used the P.O. Box address that was listed in the Nomination Agreements. Finally, Petitioners provided notice to Respondent's attorney; Petitioners had no reason to doubt that Caswell represented Respondent until February 26, 2010, when Caswell notified Petitioners about this change.[9]

There is no other reasonable step that Petitioners should have taken to satisfy the adequate notice requirement. Respondent contends that, because Petitioners complied with the Federal Rules of Civil Procedure when serving notice of the instant Verified Petition, they could have used such methods of service for the arbitration notice.[10] This is not the proper inquiry, however. *See Trans Chem. Ltd.*, 978 F. Supp. at 310 ("The right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure."). The relevant question is whether notice here was "reasonably calculated, under all the circumstances, to apprise interested persons of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Court finds that the notice here, sent to Respondent's

---

[9] The Court also notes that, even if it were to consider Caswell's Declaration, which was submitted in connection with Respondent's Sur-Reply, which the Court has stricken, nowhere in that declaration does Caswell state what he did with his former client's documents that Caswell received prior to the termination of their attorney-client relationship.

[10] Even when Petitioners complied with the Rules, however, it was difficult to serve Respondent. After the Verified Petition was filed, a registered process server delivered a full and complete copy of the Verified Petition to a resident at Respondent's household. Thereafter, Respondent hired Courteau & Associates to advise that the service was improper and to communicate that they were not authorized to receive service on Respondent's behalf. Morgan Decl., Dkt. 27. Subsequent attempts to serve Respondent at his residence were unsuccessful. He was finally served one month later on February 24, 2011 at the Santa Anita Race Track. *Id.* at ¶ 6; Proof of Service, Dkt. 10.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

email and address listed on the nomination agreements and to Respondent's attorney, meets the applicable requirements of due process.

        2.      <u>Composition of the Arbitral Authority</u>

In each of the Nomination Agreements, paragraph 14 provides the procedure for selecting an arbitrator: "Any dispute whatsoever arising from this Agreement shall be referred to a single arbitrator to be agreed upon between the parties or in default of agreement for 28 days to be appointed at the request of either party by the Council for the time being of the Thoroughbred Breeders Association." Verified Petition, Exhs. A-N.

Petitioners allege the following process was followed in selecting an arbitrator:

On Feb. 26, 2010, in the 14 demand letters sent to Respondent, Petitioners invited him to join in the arbitrator selection process and suggested three potential arbitrators. The letters also noted that, in the event no arbitrator was agreed upon by March 29, 2010, a request would be submitted to the TBA to appoint an arbitrator. Breen Decl. ¶ 8, Exhs. D1-D15, Dkt. 29.

On April 9, 2010, Petitioners sent a request to the TBA in England, and on May 18, 2010 received a letter from the TBA advising that none of the suggested arbitrators was accepted but that, instead, Samuel G. Sheppard was appointed. *Id.* at ¶¶ 9, 13.

On June 7, 2010, Arbitrator Sheppard sent a letter by Royal Mail to Respondent advising him of Sheppard's appointment. Sheppard Decl. ¶ 9, Dkt. 30. On July 21, 2010, Arbitrator Sheppard sent another letter to Respondent by Royal Mail, by email to "jammer999@aol.com," and by facsimile to 001 310 374 8840. *Id.* at ¶ 11, Exh. 3. The letter included a sample draft Award which would be awarded unless Respondent advised Sheppard of his intent to defend the proceedings within 21 days. On August 16, 2010, Arbitrator Sheppard sent an email and facsimile to Respondent advising him that he was on the brink of publishing his awards. *Id.* at ¶ 13, Exh. 5.

On Aug. 23, 2010, Arbitrator Sheppard issued the Arbitration Awards and presented them to Respondent by email. *Id.* at ¶ 14, Exhs. 6-7. On September 3, 2010, Arbitrator Sheppard issued Supplemental Arbitration awards and presented them to Respondent by Royal Mail and by email. *Id.* at ¶ 15, Exhs. 8-9 (the Royal Mail envelope was returned and stamped "Returned to Sender," and "Refused.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

Respondent claims that Petitioners first failed to negotiate over the selection of an arbitrator and second, imposed their own interpretation regarding which TBA Council may select an arbitrator.[11] The Nomination Agreements do not require the parties to negotiate with respect to the selection process; they specify only that an arbitrator may be chosen by agreement, or in default of such agreement, at the request of either party by the Council of the TBA. Thus, it was appropriate for Petitioners to approach the TBA after the required 28 days had passed to appoint an arbitrator.

Petitioners further claim that "[i]t is the custom and practice in the Thoroughbred industry in the Republic of Ireland that disputes regarding Nomination Agreements are arbitrated through the Thoroughbred Breeders Association in England." Reply, p. 15, Dkt. 47. Petitioners, however, do not provide any evidence of this custom and practice, only conclusory statements. Because the agreements do not specify which TBA to be used in the event of arbitration, it was reasonable for Petitioners to choose the TBA in England.

      3.    <u>Public Policy</u>

Respondent contends that "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." Convention, art. V(2)(b), 21 U.S.T. 2517. Courts have found that the "propriety of the makeup of an arbitration panel sufficiently implicates public policy to fall within Article V(2)(b)..." *Brandeis Intsel Ltd. v. Calabrian Chems. Corp.*, 656 F. Supp. 160, 169 (S.D.N.Y. 1987).

      a)    Legal Standard

"Any tribunal permitted by law to try cases and controversies not only must be unbiased but must also avoid even the appearance of bias." *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150 (1968). This standard has been applied to cases in the present context by at least one district court. *See Transmarine Seaways Corp. v. Rick*, 480 F. Supp. 352, 358 (S.D.N.Y. 1979) ("The Supreme Court's elucidation of arbitral propriety in *Commonwealth Coatings* is a declaration of public policy."); *Brandeis*, 656 F. Supp. at 169 ("The cases in this circuit applying *Commonwealth Coatings* to question an arbitrator's impartiality all deal with direct financial or professional relationships between an arbitrator and a party."). But, the court in *Brandeis* also recognized that "no appearance of bias arises from the fact that, in such a [specific business] community, 'the wakes of the members often cross.'" 656 F. Supp. at 169.

---

[11] The Court notes that Petitioners requested that the TBA Council of England select an arbitrator in Ireland. *See* Jamgotchian Decl., Exh. 7, Dkt. 46-1.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

      b)      Respondent's Allegations of Bias

Respondent alleges that Sheppard has "repeated financial and professional dealings" with Coolmore. Response, p. 16, Dkt. 46. Sheppard is the Chief Executive of the EBF, which sponsors races using money raised from registering stallions. EBF Registered stallions are permitted to enter EBF sponsored races and are listed as "EBF Nominated" when advertised in catalogues. Respondent also alleges that Coolmore has paid EBF for registration of some of the horses that are the subject of this action and that EBF receives 70% of its nomination fees from Coolmore and Darley Stud Farm.

Because Respondent lacked evidence to support these allegations, on September 9, 2011, the Court granted Respondent's request for discovery and permitted him to "pursue limited and focused discovery on the issue of the alleged financial relationship between Petitioners and the [EBF] or the arbitrator here, Sam Sheppard." Dkt. 53. Based upon the Court's Order, Respondent served Interrogatories and Requests for Production on Petitioners on September 19, 2011. Katsuyama Decl. ¶ 2, Exhs. 1 & 2, Dkt. 58-5, 58-6, 58-7. Each party submitted a supplemental brief on October 17, 2011. Dkt. 58, 59.

Despite this discovery, Respondent has failed to present clear evidence of any bias. Respondent's supplemental brief focuses on Petitioners' obligation to pay fees in connection with the registration of its stallions with the EBF, and the claimed lack of material distinction between the Irish EBF and "Sheppard's EBF." Dkt. 59. Because Sheppard is the Chief Executive of the EBF, Respondent reasons that Petitioners' payment of registration fees to the EBF creates a direct financial relationship between Sheppard and Petitioners. However, this is not the type of direct financial relationship that shows bias, especially in a small business area such as thoroughbred breeding. In *Woods v. Saturn Dist. Corp.*, 78 F.3d 424, 428-30 (9th Cir. 1996), the Ninth Circuit specifically noted that reliance on a financial relationship between arbitrators and a party is not sufficient on its own to prove bias in the context of determining whether there is clear evidence of impropriety. Respondent offers no evidence that Sheppard had a personal stake in the arbitration or that he would personally receive funds based on the outcome of the arbitration. Thus, the Court finds that Respondent has failed to meet his burden to establish sufficient evidence that Sheppard was biased or acted contrary to public policy.[12]

Respondent next argues that the majority of the trustees of the TBA of England have, and continue to have, routine business dealings with Coolmore. Thus, in Respondent's Declaration, he alleges that many of the members have bought horses from, and sold horses to, Coolmore, *see* Jamgotchian Decl. ¶¶ 21, 23-24, 27, Dkt. 46-1, and that they are friends with one or more of the

---

[12] Respondent seeks an order compelling Petitioners to provide further responses to his interrogatories, including the exact monetary amounts paid by Petitioners to the Irish EBF. However, the Court finds that even if such nomination payments were substantial, registration fees paid to the Irish EBF that benefit "Sheppard's EBF" are not probative of actual bias; thus, any such further responses would be superfluous, and the request is denied.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-00724 JAK (RZx) | Date | May 11, 2012 |
|---|---|---|---|
| Title | Linley Investments, et al. v. Jerry Jamgotchian | | |

founders of Coolmore, *see id.* at ¶¶ 22, 26. However, as Petitioners point out in their Reply, given the size and international presence of the Petitioners in the international thoroughbred market, it would be difficult to find anyone with knowledge in this field who has not had some contact with Petitioners. The Court finds that such conclusory statements of alleged bias do not constitute sufficient evidence of bias in the arbitrator selection process or that the Council's actions in some way violated public policy.

Finally, the Court notes that the public policy provision "is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice." *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir. 1975). The Court is not convinced that such basic notions are violated by the use of an arbitrator who is affiliated with the EBF when such arbitrator was neither chosen by Petitioners nor has ever conducted business directly with Petitioners.

        4.    <u>The Award Is Final</u>

Respondent makes an additional argument that the award here is not final, and thus, this Court cannot confirm it. However, as Respondent is merely "considering a petition to the United Kingdom court to extend his time to respond to PETITIONERS' so-called arbitration," Response, p. 18, Dkt. 46, the Court finds that the award is final.

**IV.**    <u>**CONCLUSION**</u>

For all of the foregoing reasons, the Court GRANTS Petitioners' Verified Petition and confirms the attached Arbitration Awards. As the prevailing party, Petitioners may submit a bill of costs and file a motion for attorneys' fees. The Court directs Petitioners' counsel to submit a proposed judgment in accordance with this Court's Order within fourteen days.

**IT IS SO ORDERED.**

                                                                       :

Initials of Preparer    ak